SMITH, Chief Judge,
dissenting.
I respectfully dissent. The government bears the burden of proving the factual predicate by a preponderance of evidence for U.S.S.G. § 3B1.4 to apply and enhance Fisher’s Guidelines range. See United States v. Bolden, 622 F.3d 988, 990-91 (8th Cir. 2010). For similar Guidelines enhancements, we have held that the government may meet this burden “using either direct or circumstantial evidence.” United States v. Loveless, 139 F.3d 587, 593 (8th Cir. 1998) (drug type); see also United States v. Staples, 410 F.3d 484, 490 (8th Cir. 2005) (fraud loss). Because the record — based on Fisher’s guilty plea — does not provide direct evidence that Fisher affirmatively involved M.T. in the Arkansas bank robbery, the majority holds that the district court clearly erred in finding that Fisher did so. The majority’s holding misapplies the standard of review and our precedent, ignoring the circumstantial evidence placing M.T. at the scene of the crime at Fisher’s behest.
At Fisher’s sentencing hearing, the government presented testimony from FBI Special Agent Billy Cox, the agent assigned to investigate the Bentonville robbery. Agent Cox testified about interviews in which M.T. discussed her time with Fisher. Before meeting Fisher, M.T. lived in a group home for troubled youth. M.T. met Fisher at a donut shop; Fisher promised M.T. that if she ran away with him, he would take her to see her siblings. Together they purchased a gold Toyota Avalon and set out across the country. Initially, M.T. refused Fisher’s sexual advances. Then one night Fisher got her “so messed up” on methamphetamine that she gave in, and from that time the two remained sexually involved. When they ran out of money, they started robbing banks:
She said that the first one was the Cas-per, Wyoming bank robbery, that they planned it together, in her words. They planned it together; that Mr. Fisher wrote out a demand note and that he didn’t let her see what it said. And that basically she helped plan a getaway route via Google Maps on her phone and that basically they did this because they had been, I guess, you know, asking people for money, for help, and that they weren’t getting anything.
M.T. said that she would go to the banks with Fisher and remain in the Avalon during the robberies. Although M.T. did not specifically describe the Bentonville robbery, she remembered being in Arkansas to commit it. The Avalon was spotted on security cameras near the Bentonville bank. Fisher robbed this bank just as he did the others that M.T. described. On this evidence, the district court determined that M.T. “was used, by [Fisher’s] own words, as his quote/unquote navigator obviously to assist in the entry route and the getaway route from the [Bentonville] robbery.”
In United States v. Gaskin, the Second Circuit affirmed the application of § 3B1.4 when the district court reached the “ ‘inescapable’ conclusion” that the defendant “used” his 17-year-old son by bringing him to a drug deal. 364 F.3d 438, 464 (2d Cir. 2004). The boy’s presence at the crime “supported an inference” that he was there by the defendant’s “conscious choice.” Id. at 465. Because the defendant’s “single purpose” for being at the location was to commit a crime, “the logical conclusion” was that the minor was there to help his father. Id. The Second Circuit found that these inferences supported the application of § 3B1.4. The same logic applies here. Fisher brought M.T. to the Bentonville *807 bank robbery. She waited in the car for him during the crime. She helped him get away. Although the record does not disclose an “affirmative” request from Fisher specifically relating to the Bentonville robbery, an affirmative step to include M.T. in committing the crime can reasonably be inferred. The district court did not clearly err in its fact finding.
Our precedent also supports this result. For purposes of § 3B1.4, “a defendant may ‘use’ a minor by asking the minor to accompany him or her to a crime.” United States v. Voegtlin, 437 F.3d 741, 747 (8th Cir. 2006) (citing Paine, 407 F.3d at 965). We have upheld a § 3B1.4 enhancement when “[b]ut for” the defendant, minors “would not have been involved” in a bank robbery. United States v. Wingate, 369 F.3d 1028, 1032 (8th Cir. 2004), reinstated, 415 F.3d 885 (8th Cir. 2005). We have also upheld the enhancement when a defendant planned a burglary with a minor because the minor, who acted as the getaway driver, was not an “ ‘equal partner’ in the offense.” United States v. Jones, 612 F.3d 1040, 1048 (8th Cir. 2010). Fisher’s case is not factually distinguishable. The majority stretches Paine’s holding out of shape. In Paine, we upheld the enhancement because of direct admissions by the defendant to include his son in the convicted crime, but Paine’s holding does not preclude a district court’s reliance on circumstantial evidence to find an affirmative step.
For these reasons, I respectfully dissent.